IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JERRY FRAZIER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-1688 |
| JEFFREY BEARD, ET AL. | : | |

**SURRICK, J.**                                                                                                                       **OCTOBER  14 , 2014**

**MEMORANDUM**

      Presently before the Court is Petitioner Jerry Frazier's Petition for Writ of Habeas Corpus (ECF No. 1) and Objections (ECF No. 12) to the Report and Recommendation of Magistrate Judge Henry S. Perkin (ECF No. 10).  For the following reasons, Petitioner's Objections will be overruled, the Report and Recommendation will be approved and adopted, and the Petition for Writ of Habeas Corpus will be denied and dismissed.

**I.**      **BACKGROUND**

      Petitioner Jerry Frazier was sentenced to life in prison on September 27, 2004, for first-degree murder, criminal conspiracy, and possession of an instrument of crime.  He was convicted by a jury for the 2003 murder of Jose Oquindo.  Petitioner was found to have called to Oquindo, saying "Jose, come here, let me talk to you."  When Oquindo approached, Petitioner and two other men drew guns and began shooting.  Oquindo died from his wounds less than an hour later.

      Oquindo's fiancé, Wanda Figueroa, testified at trial that she had seen two men chasing Oquindo back to the house but was unable to identify who was shooting at him because she had ducked back into the house.  George Medina, who had known Petitioner since childhood, testified that he had heard someone call to Oquindo before the shooting but was unable to

identify who had done so.  However, in a 911 call placed by Medina, a recording of which was played for the jury, Medina is heard saying that "Man Man [a nickname for Petitioner] called him."  Another witness testified that he saw Petitioner call to Oquindo, ask him, "What's the beef between you and my man?," and draw a gun, at which point Petitioner and the two other men began firing at Oquindo.

Petitioner filed an appeal in the Pennsylvania Superior Court, and the trial court issued an order instructing him to file a statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  Petitioner failed to do so; as a result, the trial court issued an opinion concluding that the appeal should be dismissed.  Appellant subsequently filed a motion seeking remand so he could file a 1925(b) statement.  The Superior Court granted the motion.  Petitioner's appeal presented a single issue for review:  whether the verdict was against the weight of the evidence.  The Superior Court concluded that this issue was not properly preserved, but that even if it had been, "[t]he jury was free to credit the testimony of the eyewitness and the decision to do so does not shock our sense of justice . . . ." *Comm. v. Frazier*, No. 2682 EDA 2004, slip op. at 3-5 (Pa. Sup. Ct. Aug. 1, 2006) (nonprecedential).  The court affirmed the judgment of sentence.  *Id.* at 5.

Petitioner then filed a petition under the Post Conviction Relief Act, 42 Pa. Cons. Stat. Ann. § 9541 *et seq.* ("PCRA"), arguing that trial counsel had been ineffective for failing to call Laura Garrett as a witness and failing to object to a prosecution witness' reference to Petitioner's post-arrest silence.  The PCRA court denied the petition without a hearing, and Petitioner appealed.  The Superior Court affirmed, concluding that Petitioner had waived his right to call witnesses during a colloquy with the trial court, and that the court's instruction to the jury that Petitioner's silence was not to be held against him prevented the witness' statement from

prejudicing him.  *Comm. v. Frazier*, No. 2612 EDA 2008, slip op. at 4-7 (Pa. Sup. Ct. Aug. 20, 2008).

Petitioner filed the instant Petition for Writ of Habeas Corpus, and we referred the Petition to Magistrate Judge Henry S. Perkin for preparation of a Report and Recommendation. The Petition raises the same issues that were raised before the Superior Court.  Magistrate Judge Perkin filed his Report and Recommendation on September 12, 2012 (R. & R., ECF No. 10), and Petitioner submitted his objections thereto on September 25, 2012.  (Pet.'s Obj., ECF No. 12.)

## II.    LEGAL STANDARD

"A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  We review *de novo* those portions of the Magistrate Judge's R&R to which specific objections have been made.  *Id.*; Fed. R. Civ. P. 72(b); *see also Thomas v. Arn*, 474 U.S. 140, 141-42 (1985) ("[A] United States district judge may refer . . . petitions for writ of habeas corpus[] to a magistrate, who shall conduct appropriate proceedings and recommend dispositions . . . .  [A]ny party that disagrees with the magistrate's recommendations may serve and file written objections to the magistrate's report, and thus obtain *de novo* review by the district judge.") (internal quotation marks omitted).

## III.   DISCUSSION

The Report and Recommendation concluded that all of Frazier's claims should be dismissed or denied, and that no certificate of appealability should issue.  (R. & R. 1.)  We will address each specific objection.

### A.    Failure to Call Laura Garrett as a Witness

Petitioner argues that trial counsel's failure to call Laura Garrett as an exculpatory witness constitutes ineffective assistance of counsel.  According to Petitioner, Garrett would

have testified that while the shots were being fired she saw Petitioner running away from the area with no weapon in his hand.

A petitioner alleging ineffective assistance of counsel has a heavy burden. Under *Strickland v. Washington,* 466 U.S. 668, 689 (1984), counsel is presumed to have acted within the range of "reasonable professional assistance," and the defendant bears the burden of "overcom[ing] the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). To establish ineffective assistance of counsel in violation of the Sixth Amendment, Petitioner must show that: (1) his attorney's performance was deficient; and (2) the deficient performance prejudiced his defense. *Id.* at 687. To establish deficient representation, Petitioner must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness under prevailing professional norms." *Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir. 1999) (quoting *Strickland,* 466 U.S. at 688). To establish prejudice, Petitioner must show that "counsel's errors were so serious as to deprive [him] of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Judicial scrutiny of counsel's performance must be highly deferential" as "[t]here are countless ways to provide effective assistance in any given case." *Strickland,* 466 U.S. at 689.

Where, as here, a habeas corpus petition challenges a claim that was adjudicated on the merits in state-court proceedings, the petition may only be granted if the state-court's adjudication of the claim "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  Petitioner's burden is particularly high in this matter because *Strickland* and § 2254(d) "are both highly deferential and when the two apply in tandem, review is 'doubly' so. . . . When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 788 (2011) (citations and internal quotation marks omitted).  Further, the Supreme Court has observed that:

> [a]n ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve.

*Id.* at 788 (citing *Strickland,* 466 U.S. at 689–90).

Petitioner cannot satisfy this high standard.  He argues that the trial court's colloquy with Petitioner did not waive his right to argue that counsel was ineffective because the colloquy referred to his right to testify in his own defense, with only a passing mention of his right to call other witnesses.  (Pet.'s Reply 6, ECF No. 9.)  However, the transcript of the colloquy does establish that the trial court did in fact inform Petitioner of his right to call other witnesses:

> THE COURT:  There are witnesses you can also call; do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  And it's your decision also not to call witnesses?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You're doing that of your own free will?
>
> THE DEFENDANT:  Yes.

5

>THE COURT:  Again, no threats or promises were made to get you to do that?
>
>THE DEFENDANT:  No.
>
>THE COURT:  After discussing this with your attorney, that's what you both decided on?
>
>THE DEFENDANT:  Absolutely.

(*Id.* at 5-6.)  The trial court made it abundantly clear that Petitioner had the right to call witnesses on his behalf, and Petitioner likewise made it clear that he did not wish to do so.  Petitioner argues that he "did not state that he had discussed with counsel whether he should present specific defense witnesses, and none were identified during the colloquy (including Ms. Garrett)."  (*Id.* at 6.)  Petitioner cites no authority for the proposition that a trial court must list every potential defense witness in a colloquy with a defendant for the waiver to be knowing and intelligent, and we are aware of none.  It was therefore not an "unreasonable determination of the facts," 28 U.S.C. § 2254(d)(2), for the Superior Court to conclude from this colloquy that Petitioner had knowingly and intelligently waived his right to call *any* witnesses, including Garrett.

   Moreover, we conclude that Petitioner is not prejudiced from the failure to call Garrett.  Her testimony merely would have been duplicative of her husband George Medina's testimony that he had seen Petitioner without a gun in the immediate aftermath of the shooting.  In addition, Garrett's testimony that she had not seen a gun in Petitioner's hand would not have been exculpatory.  *See Kee v. Sec'y of D.O.C.*, No. 07-4571, 2008 WL 5429697, at *8 (E.D. Pa. Sept. 5, 2008), approved and adopted by No. 07-4571, 2008 WL 5429697 (E.D. Pa. Dec. 30, 2008) ("[The witness] stated that [he] did not see petitioner with a gun, but this contention does not demonstrate that petitioner did not execute the shooting.").

Finally, there is no reason to conclude that the PCRA court's decision not to hold an evidentiary hearing regarding counsel's strategy, and the Superior Court's affirmance of that decision, was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).  The Third Circuit Court of Appeals has made it clear that "evidentiary hearings regarding counsel's strategy will not be required in all cases, as the objective reasonableness inquiry may obviate the need for such a hearing." *Thomas v. Varner*, 428 F.3d 491, 501 n.10 (3d Cir. 2005).  Similarly, our conclusion that Petitioner was not prejudiced by trial counsel's failure to call Garrett as a witness renders moot any investigation into counsel's strategy at trial.  *See Schriro v. Landrigan*, 550 U.S. 465, 481 (2007) (finding no abuse of discretion where district court refused to hold evidentiary hearing in ineffective-assistance claim in which petitioner had declined to offer mitigation evidence during death-penalty sentencing).  We therefore find no fault in the PCRA court's decision to not hold an evidentiary hearing.

      **B.**    **Failure to Object to a Witness' Comment about Petitioner's Silence**

Petitioner next contends that trial counsel was ineffective because he failed to object or request a limiting instruction when a witness stated during the prosecution's redirect that Petitioner had not said anything after his arrest.  The question that elicited this response came after the following exchange during defense counsel's cross-examination of the arresting officer:

Q.  You went up to [Petitioner], right?

A.  Yes.

Q.  You identified yourself, right?

A.  Yes, we were in full uniform.

Q.  He didn't run, did he?

    A.  No.

    Q.  He didn't give you a hard time, correct?

    A.  No.

    Q.  You, in fact, said he had no weapons on him; did he?

    A.  No.

    [ . . . ]

    Q.  And he took out his ID and showed it to you; right?

    A.  Yes.

    Q.  And you had his ID and his address, and he didn't try to run. He says, "What's this about?" And you said, "You're under arrest for murder." Right?

    A.  I told him we were taking him down to Homicide.

(Gov't's Resp. 10-11, ECF No. 8.) The prosecution asked one question of the officer on redirect:

    Q.  What was [Petitioner's] reaction when you said you were taking him to homicide?

    A.  He didn't say anything.

    Q.  Nothing further.

(*Id.* at 8.) The Superior Court found that Petitioner had suffered no prejudice from the failure to object because the trial court had instructed the jury that it was not to make any adverse inference from Petitioner's choice to remain silent. The Superior Court also remarked that the strength of the Commonwealth's case against Petitioner made it highly unlikely that this fleeting reference to his post-arrest silence resulted in prejudice. *Frazier*, No. 2612 EDA 2008, slip op. at 4-7.

    The Report and Recommendation concludes that Petitioner cannot show that the Superior Court's rejection of this claim was contrary to, or an unreasonable application of, clearly established federal law. (R. & R. 20.) We agree. Petitioner argues that the trial court's jury instruction regarding Petitioner's silence "related exclusively to the Petitioner's decision not to

take the stand on his own behalf at the trial, and did not cure the error that occurred as the result of the improper testimony of [the] officer." (Pet.'s Obj. ¶ 2(b).)  However, we "presume that juries follow instructions . . . and the time lapse between the testimony and the curative instruction here was not long enough to overcome that presumption." *United States v. Hakim*, 344 F.3d 324, 326 (3d Cir. 2003).  We are satisfied that the jury understood that the trial court's instruction meant that Petitioner's post-arrest silence could not be held against him.

Even if it were otherwise, we agree with the Report and Recommendation and the Superior Court that trial counsel could not have objected to the officer's statement.  Trial counsel elicited responses from the officer on cross-examination that were designed to show that Petitioner was calm and cooperative when reacting to his arrest.  We agree that this was a reasonable strategy.  It also opened the door to the question by the prosecutor and the response that Petitioner had said nothing upon learning that he was being brought to homicide.  *See Comm. v. DiNicola*, 866 A.2d 329, 335-36 (Pa. 2005) (finding that prosecution's elicitation of testimony about defendant refusing interview was a fair response to defense counsel's argument).

For the foregoing reasons, we agree with Magistrate Judge Perkin and the Superior Court that Petitioner's arguments regarding ineffective assistance of counsel are without merit.

### C.     Certificate of Appealability

A certificate of appealability only issues if reasonable jurists could disagree with the Court's disposition of the matter.  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  No reasonable jurist could disagree with our conclusion that Petitioner's claims are meritless.  No certificate of appealability will issue.

## IV. CONCLUSION

After a *de novo* review of the record, the Objections filed by Jerry Frazier will be overruled, and the Report and Recommendation will be approved and adopted. Frazier's Petition will be denied, and no certificate of appealability will issue.

An appropriate Order will follow.

BY THE COURT:

_____
**R. Barclay Surrick, U.S.D.J.**